**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>          Plaintiff,<br><br>   v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>          Defendant. | Case No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br>    Debtor. | |
| MARSHA PESHKIN, and a large group of other customers of Bernard L. Madoff Investment Securities LLC,<br><br>         Appellants,<br><br>   v.<br><br>JEANNE LEVY-CHURCH, FRANCIS N. LEVY, and IRVING H. PICARD, as Trustee for the Liquidation of Bernard L. Madoff Securities LLC,<br><br>         Appellees. | District Court Appeal No. 11-CV-3313 (DAB) (GWW) |

**BRIEF OF BLMIS CUSTOMERS ON APPEAL FROM ORDER DENYING MOTION TO VACATE SETTLEMENT ORDER BASED UPON TRUSTEE'S CONCEALMENT OF MATERIAL EVIDENCE**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

    The Settlement Order Should Have Been Set Aside Under Rule 60(b)(3)........................ 2

    The Settlement Order Should Have Been Set Aside Under Rule 60(b)(2)........................ 3

    The Settlement Order Should Have Been Set Aside Under Rule 60(b)(6)........................ 3

    The Bankruptcy Court Abused Its Discretion In Striking The Customers' Entire Reply Brief ................................................................................................ 4

STATEMENT OF JURISDICTION....................................................................... 4

STATEMENT OF ISSUES PRESENTED............................................................ 4

STANDARD OF APPELLATE REVIEW ............................................................ 5

STATEMENT OF THE CASE................................................................................ 5

    Trustee's Settlement with the Levy Family ................................................ 5

    Disclosure of Previously Concealed Material Information ............................ 7

    Customers' Motion to Vacate Judgment.................................................... 9

ARGUMENT ........................................................................................................... 10

    I.       THE STANDARD TO SET ASIDE ORDERS UNDER RULE 60(b). ...............10

    II.     THE BANKRUPTCY COURT ERRED IN DENYING THE MOTION PURSUANT TO RULE 60(b)(2), (3), AND/OR (6)............................................11

          A.    The Trustee's Concealment of Norman Levy's Participation in Madoff's Scheme Compelled the Grant of the Customers' Motion Under Rule 60(b)(2)............................................................................11

          B.    The Trustee's Concealment of Material Information Warranted vacation of the Order Pursuant to Rule 60(b)(3). ......................................14

          C.    Substantial Justice Requires that the Order be  Set Aside Pursuant to Rule 60(b)(6)............................................................................18

    III.    THE BANKRUPTCY COURT ERRED IN STRIKING THE REPLY...............19

CONCLUSION........................................................................................................ 20

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ackermann v. U.S.,*
340 U.S. 193 (1950) ................................................... 11, 14

*Banco Central Del Paraguay v. Parauay Humanitarian Foundation, Inc.,*
2007 WL 2493684 (S.D.N.Y. Sept. 5, 2007) ...............................12

*Barron Partners, L.P. v. LAB 123, Inc.,*
593 F. Supp. 2d 667 (S.D.N.Y. 2009) ...................................15

*Chambers v. NASCO, Inc.,*
501 U.S. 32 (1991) .................................................... 18

*Chiarella v. U.S.,*
445 U.S. 222 (1980) ................................................... 16

*Cooter & Gell v. Hartmarx Corp.,*
496 U.S. 384 (1990) .................................................... 5

*Delcarpio v. Ticconic,*
124 Fed. Appx. 71 (2d Cir. 2005) ....................................... 5

*Entral Group Intern, LLC v. 7 Day Café & Bar,*
2008 WL 4726306 (2d Cir. Oct. 28, 2008)................................14

*Fidelity Partners, Inc. v. First Trust Co. of New York,*
58 F. Supp. 2d 55 (S.D.N.Y.1999)......................................12

*Geltzer v. Andersen Worldwide, S.C.,*
2007 WL 273526 (S.D.N.Y. Jan. 30, 2007) .............................17

*Giuliano v. Everything Yogurt, Inc.,*
819 F. Supp. 240 (E.D.N.Y.1993) ...................................... 19

*Gonzalez v. Crosby,*
545 U.S. 524 (2005).................................................... 18

*In re Center Teleproductions, Inc.,*
112 B.R. 567 (Bankr. S.D.N.Y. 1990) .................................. 16

*In re Chochise College Park, Inc.,*
703 F.2d 1339 (9th Cir. 1983).......................................... 16

*In re Ionosphere Clubs, Inc.,*
  156 B.R. 414 (S.D.N.Y. 1993) .................................................................17

*In re Pearson,*
  210 B.R. 500 (Bankr. D. N.H. 1997) .......................................................14

*In re Prudential Lines, Inc.,*
  170 B.R. 222 (Bankr. S.D.N.Y. 1994) ..................................................... 16

*In re Salander,*
  2011 WL 2162916 (Bankr. S.D.N.Y. June 2, 2011) ................................12

*Ins. Co. of N. Am. v. Public Serv. Mut. Ins. Co.,*
  609 F.3d 122 (2d Cir. 2010).....................................................................12

*John Hancock Property and Cas. Ins. Co. v. Universal Reinsurance Co., Ltd.,*
  147 F.R.D. 40 (S.D.N.Y. 1993) ...............................................................20

*King v. First American Investigations, Inc.,*
  287 F.3d 91 (2d Cir. 2002) ..................................................................3, 15

*Kupferman v. Consolidated Research & Mfg. Corp.,*
  459 F.2d 1072 (2d Cir. 1972) ................................................................. 16

*Liljeberg v. Health Services Acquisition Corp.,*
  486 U.S. 847 (1988)................................................................................. 19

*Lukowski v. County of Seneca,*
  2009 WL 467075 (W.D.N.Y. Feb. 24, 2009) ........................................... 19

*Matter of Emergency Beacon Corp.,*
  666 F.2d 754 (2d Cir. 1981) ....................................................................14

*Murray v. Carroll,*
  2008 WL 2705419 (D. Conn. July 9, 2008)............................................20

*Philadelphia Indem. Ins. Co. v. Horowitz, Greener & Stengel, LLP,*
  379 F. Supp. 2d 442 (S.D.N.Y. 2005) ......................................................15

*Pope v. Federal Express Corp.,*
  974 F.2d 982 (8th Cir. 1992) .................................................................. 18

*Protective Committee for Independent Stockholders*
  *of TMT Trailer Ferry, Inc. v. Anderson,*
  390 U.S. 414 (1968) .................................................................................17

*Radack v. Norwegian America Line Agency, Inc.,*
  318 F.2d 538 (2d Cir. 1963) .................................................................... 18

*RCI HV, Inc. v. Transtec (RC) Inc.,*
   2004 WL 1197246 (May 28, 2004 S.D.N.Y. 2004) ...................................... 16

*Rubinow v. Ingelheim,*
   2010 WL 1882320 (D. Conn. May 10, 2010) ............................................... 15

*Serzysko v. Chase Manhattan Bank,*
   461 F.2d 699 (2d Cir. 1972) ..................................................................... 15

*State St. Bank and Trust Co. v. Inversiones Errazuriz Limitada,*
   374 F.3d 158 (2d Cir.2004) ...................................................................... 14

*Transaero, Inc. v. La Fuerza Aerea Boliviana,*
   162 F.3d 724 (2d Cir. 1998) .................................................................. 5, 6

*Trehan v. Von Tarkanyi,*
   63 B.R. 1001 (S.D.N.Y. 1986) ............................................................. 15, 16

*U.S. v. Alessi,*
   599 F.2d 513 (2d Cir. 1979) ..................................................................... 19

*Universal Oil Products Co. v. Root Refining Co.,*
   328 U.S. 575 (1946) ................................................................................. 18

*Washington v. Kellwood Co.,*
   2009 WL 855652 (S.D.N.Y. March 24, 2009) ............................................ 15

## STATUTES

15 U.S.C. § 78fff-1(d) ...................................................................... 5, 17

28 U.S.C. § 158(a)(1) ............................................................................ 4

Fed. R. Bankr. P. 9019 ..................................................................... 5, 16

Fed. R. Civ. P. Rule 59(b) ........................................................... 3, 10, 11

Fed. R. Civ. P. Rule 60 ................................................................... passim

## OTHER AUTHORITIES

12 MOORE'S FEDERAL PRACTICE – Civil ¶ 60.02 ................................ 10, 15, 16

RESTATEMENT (SECOND) OF TORTS § 551(2)(a) (1976) ........................... 16

## PRELIMINARY STATEMENT

In a case involving $64.8 billion of losses, this appeal raises a critical issue as to the bankruptcy court's duty to monitor the integrity of trustees appearing before it. Marsha Peshkin and a large group of other customers (the "Customers") of Bernard L. Madoff Investment Securities LLC ("BLMIS") appeal the March 30, 2011 order of the bankruptcy court (the "Order").[1]  The Order denied the Customers' motion pursuant to Fed. R. Civ. P. ("Rule") 60(b) (the "Motion") to set aside the bankruptcy court's order approving the Trustee's settlement (the "Settlement") of all claims against Jeanne Levy-Church and Francis N. Levy, the children of Norman Levy (the "Levy Heirs"), for $220 million  (the "Settlement Order").  The Customers sought to vacate the Settlement Order immediately upon discovering that, when the Trustee moved for approval of the Settlement, he concealed explosive information which should have compelled denial of the Trustee's motion.[2]

The information that the Trustee deliberately withheld from the court and the Customers was that:

1.    Norman Levy financed Madoff's fraudulent scheme in an amount exceeding $100 billion from 1992 through 2001.[3]

2.    The Levy Heirs had an outstanding $2 billion margin loan from

---

[1] Doc. #3984.

[2] *See gen.* Doc. #3861, Memorandum of Law in Support of Customers' Motion to Set Aside the Order Approving the Trustee's Settlement with the Levy Heirs for Failure to Disclose Material Information (hereinafter the "Memo. in Support of Motion").

[3] *See* Doc. #3862, Decl. of H. Chaitman, Ex. G (01/24/11 letter from SIPC president Stephen Harbeck to Congressman Garrett, Chair of the House Subcommittee on Capital Markets, Insurance, and Government Sponsored Enterprises (hereinafter the "Harbeck Letter")) at 14-15.

BLMIS as of December 11, 2008.[4]

Not only did the Trustee deliberately conceal this explosive information, he also affirmatively sought to mislead the court when he moved for approval of the Settlement because he praised the Levys for being "forthright and sincere in their desire to do the right thing"[5] and he stated that the $220 million settlement represented "nearly one hundred percent" of the amount that the Trustee was entitled to recover.[6]   Although he knew at the time that the Levy Heirs had a $2 billion margin loan with BLMIS, he did not disclose this fact to the court. Relying (as they reasonably should have been able to do) on the veracity of the Trustee's statements, no customer objected to the Settlement and it was approved by the bankruptcy court.

The bankruptcy court abused its discretion by denying the Motion in the face of uncontroverted evidence of the Trustee's inexplicable failure to disclose material information.  Under Rule 60(b)(2), (3), and (6), the Settlement Order should have been set aside on grounds of newly discovered evidence, fraud, misrepresentation, or misconduct by the Trustee.

### The Settlement Order Should Have Been Set Aside Under Rule 60(b)(3).

The Trustee's concealment of material information warrants relief from the Settlement Order pursuant to Rule 60(b)(3), which permits a court to set aside an order

---

[4] *See id.* at 10, fn. 3 (acknowledging existence of $8 billion of margin loans of Jeffry Picower and Levy's children.)

[5] Doc. #3862, Decl. of H. Chaitman, Ex. E (Motion For Entry of Order . . . Approving an Agreement By and Among the Trustee and Jeanne Levy-Church and Francis N. Levy (hereinafter the "Settlement Motion")), at ¶ 11.

[6] *See id.* at ¶¶ 12, 13.

based on fraud, misrepresentation or other misconduct of a party.  Conduct "that affects the integrity of the process of adjudication" rises to the level of a fraud upon the court. *See King v. First American Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002).  The Trustee, as an officer of the court and as a fiduciary of the Customers, has a duty of absolute candor.  His concealment of the explosive information about Norman Levy and the Levy Heirs questions the integrity of the entire SIPA liquidation.

### The Settlement Order Should Have Been Set Aside Under Rule 60(b)(2).

The bankruptcy court should have set aside the Settlement Order based upon "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." *See* Rule 60(b)(2).  Norman Levy's $100 billion financing of Madoff's scheme, and the Levy Heirs' $2 billion debt to BLMIS, were known to the Trustee when he sought approval of the Settlement.  He admitted so himself.  However, the Customers' first opportunity to discover this information was when it was disclosed in the Harbeck Letter.  It is inconceivable that the Settlement would have been approved if customers had known that the Levy Heirs were settling a $2 billion debt for $220 million.  Therefore, the bankruptcy court erred by denying the Motion under Rule 60(b)(2).

### The Settlement Order Should Have Been Set Aside Under Rule 60(b)(6).

The bankruptcy court should have set aside the Settlement Order, if on no other ground, pursuant to Rule 60(b)(6), which allows relief from a judgment for "any other reason that justifies relief."  This provision has been invoked where its application is critical to bring about "substantial justice."  The application of Rule 60(b)(6) is warranted here because the Trustee, as a fiduciary of the customers, abused his position by con-

cealing material information that could have resulted in a larger settlement for custom-

ers.

### The Bankruptcy Court Abused Its Discretion In Striking The Customers' Entire Reply Brief

In their Reply, the Customers argued, *inter alia,* that the Trustee should be re-

moved in view of his admitted concealment of material information.[7]   Finding this sug-

gestion procedurally improper, the bankruptcy court improperly struck the entire Reply.

### STATEMENT OF JURISDICTION

This Court has jurisdiction to hear the appeal of the Order pursuant to 28 U.S.C.

§ 158(a)(1) because it is a final order.

### STATEMENT OF ISSUES PRESENTED

1.     Did the bankruptcy court abuse its discretion in denying the Customers'

motion to set aside the Settlement with the Levy Heirs for $220 million, based upon the

Trustee's representation to the bankruptcy court that this was the total sum owed by the

Levy Heirs, in view of the Trustee's inexplicable and deliberate failure to disclose that:

　　　　a.     The Levy Heirs had an unpaid $2 billion margin loan with BLMIS

outstanding as of December 11, 2008; and

　　　　b.     Norman Levy had financed Madoff's fraudulent scheme in an

amount exceeding $100 billion during the period from 1992 through 2001.

2.     Where the Trustee has (a) a fiduciary duty of absolute candor to the court

and to customers and (b) an obligation pursuant to Bankruptcy Rule 9019 of complete

disclosure of all material facts to the court in connection with a proposed settlement,

---

[7] Doc. # 3960, Reply Brief in Further Support of Motion to Set Aside the Order Approv-
ing the Trustees Settlement with the Levy Heirs for Failure to Disclose Material Infor-
mation (hereinafter the "Reply"), at 5.

and (c) a statutory obligation pursuant to 15 U.S.C. §78fff-1(d)(3) to report to the bankruptcy court facts he ascertains with respect to fraud and irregularities of BLMIS, was it an abuse of discretion for the bankruptcy court to deny the Motion and, thereby, to leave in place the Settlement Order which was procured by the Trustee's fraud.

3.      Did the bankruptcy court err in striking the Reply because he viewed the suggestion that the Trustee be removed as procedurally improper.

## STANDARD OF APPELLATE REVIEW

The denial of a Rule 60(b) motion is reviewed for abuse of discretion. *See Delcarpio v. Ticconic*, 124 Fed. Appx. 71, 72 (2d Cir. 2005) (citing *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 729 (2d Cir. 1998)).  A court "'necessarily abuse[s] its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Transaero*, 162 F.3d at 729 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

## STATEMENT OF THE CASE

### Trustee's Settlement with the Levy Family

On January 27, 2010, the Trustee announced the Settlement and praised the Levy Heirs for offering to settle all possible claims against them for $220 million:

> I am very pleased that the Levys came to us to discuss the claims that BLMIS has against them and that they agreed to return to BLMIS $220 million, the amount we requested, for the benefit of the victims of Madoff's fraud. **The Levys have acted honorably and are to be commended. We hope that others will follow their example.** [8]

---

[8] *See* Doc. #3862, Decl. of H. Chaitman, Ex. D (Press Release of Irving H. Picard, "MADOFF TRUSTEE ANNOUNCES SETTLEMENT OF $220 MILLION," dated January 27, 2010), at 1.

On that same day, the Trustee moved for approval of the Settlement Motion  in which he represented that the $220 million offer from the Levy Heirs represented "nearly one hundred percent" of the amount that the Trustee was entitled to recover.[9] He commended the Levy Heirs  on their "good faith negotiations" that led to the Settlement [10]  and praised them for being "forthright and sincere in their desire to do the right thing."  He stated that he "appreciate[d] the manner in which the Levys cooperated with him to obtain the information he needed to arrive at the settlement"  and expressed the hope "that other BLMIS customers will come forward, follow suit, and similarly engage in cooperative and candid settlement discussions." *Id.*

On February 18, 2010, the bankruptcy court held a hearing on the Settlement Motion.  At that time, Baker & Hostetler, LLP ("B&H"), appearing on behalf of the Trustee, once again praised the Levys for reaching out to the Trustee and reported to the Court that the Levys "felt badly about having other people's money and they wanted to return to the Trustee the profits they received, which was really other people's money." [11] To further impress the court, B&H stated that Madoff took advantage of Levy by misappropriating $250 million as the executor of Mr. Levy's estate.[12]  The Trustee submitted

---

[9] *See* Doc. #3862, Decl. of H. Chaitman, Ex. E (Settlement Motion), at ¶¶ 12, 13; *see also* Doc. #3862. Decl. of H. Chaitman, Ex. F (02/18/10 Hrg. Tr. on the Settlement Motion (hereinafter the "02/18/10 Tr.")) at 5:11-6:6.

[10] Doc. #3862, Decl. of H. Chaitman, Ex. E (Settlement Motion), at ¶11.

[11] *See* Doc. # 3862, Decl. of H. Chaitman, Ex. F (02/18/10 Tr.), at 5:8-10.

[12] *Id.* at 4:9-17.

an affidavit to the Court in support of the Motion "in which he stated that he believed the settlement was appropriate in his business judgment."[13]

No objections to the Settlement were made because parties in interest, including the Customers, assumed that the Trustee was fulfilling his fiduciary obligation to customers to disclose all material information.  The bankruptcy court entered the Settlement Order approving the Settlement.

### Disclosure of Previously Concealed Material Information

In the Harbeck Letter, it was disclosed for the first time that Norman Levy had financed Madoff's scheme to the extent of $100 billion during the period from 1992 – 2001 [14] and that the Levy Heirs had a $2 billion margin loan with BLMIS as of December 11, 2008. [15]

Thus, contrary to the Trustee's categorization of the Levy Heirs as victims, their father, from whom they inherited their fortune, played a critical role in Madoff's scheme.  In fact, Madoff admitted, during his interview with the Financial Times, that Norman Levy was complicit in his scheme. [16]

---

[13] *Id.* at 7:8-12.

[14] *See* Doc. #3862, Decl. of H. Chaitman, Ex. G (Harbeck Letter), at 14-15.

[15]  *See id.* at 10, fn. 3 (acknowledging existence of $8 billion of margin loans of Jeffry Picower and Levy's children.)

[16] *See* "From Behind bars, Madoff spins his story" by David Gelles and Gillian Tett, April 8 2011, available at <http://www.ft.com/ intl/cms/s/2/a29d2b4a-60b7-11e0-a182-00144feab49a.html>.

The Customers now know at least a portion of the explosive facts that the Trustee deliberately concealed from the bankruptcy court and the Customers when he sought approval of the Settlement:

1.      During the period from 1992 through 2001, Levy financed Madoff's operation with more than $100 billion. [17]   During 2002, $35 billion was transferred from Levy's account at JP Morgan Chase ("Chase") to the BLMIS account at Chase.  The same amount of money was transferred back from BLMIS to Levy, including 318 separate transfers from BLMIS to Levy in the precise amount of $986,301 (collectively amounting to a total of $313,643,718 in transfers).  That constitutes more than one transfer per day that Chase was open for business.[18]

2.      BLMIS made a margin loan of more than $2 billion to the Levy Heirs, which was outstanding as of December 11, 2008.[19]   Even after the Customers raised the issue of the Trustee's failure to disclose material information, the Trustee has still not disclosed any information about the $2 billion margin loan.  Thus, for example, the Cus-

---

[17] *See* Doc. #3862, Decl. of H. Chaitman, Ex. G (Harbeck Letter), at 14-15.

[18] *See* Doc. #3862, Decl. of H. Chaitman, Ex. C *(*Excerpt from Trustee's complaint in *Picard v. JPMorgan Chase & Co.*, *et als.* (hereinafter the "JPMorgan Complaint"), Adv. Pro. No. 10-04932*)*, at ¶ 224.

[19] The Trustee failed to disclose approximately $8 billion of negative equity balances in accounts of Jeffry Picower and the Levy Heirs.  *See* Doc. #3862, Decl. of H. Chaitman, Ex. G (Harbeck Letter) at 10, fn. 3.  Of that $8 billion, $2 billion was the liability of the Levy Heirs.  *See* Trustee's complaint in *Picard v. Picower*, *et als.* (hereinafter the "Picower Complaint"*)*, Doc. #1, Adv. Pro. No. 09-01197 (BRL), at ¶ 63(d) (asserting that Picower's accounts reported a staggering margin balance of approximately $6 billion).  Thus, if the Picowers had an approximately $6 billion margin loan balance, the Levy Heirs had a $2 billion margin loan.  More recently, the Trustee has acknowledged that the total $8 billion figure represents "amounts owed . . . to BLMIS."  Motion for an Order Approving Initial Allocation of Property to the Fund of Customer Property and Authorizing an Interim Distribution to Customers, Doc. 4048, Case No. 08-01789 (BRL), at ¶ 72.

tomers do not know (i) how long the loan was outstanding; (ii) how much money the Levy Heirs were paid on the stock BLMIS showed on their statements; and (iii) what the Levy Heirs did with the massive (stolen) fortune they inherited from their father.

While this shocking information was known to the Trustee when he sought approval of the Settlement, the Customers' first opportunity to learn of Norman Levy's participation in the fraud was after disclosure of the Harbeck Letter and after the Trustee filed the second redacted version of his complaint against JPMorgan Chase (in substantially unredacted form in April 2011), which identified Norman Levy as the customer with the highly suspicious transactional history in his account.

### Customers' Motion to Vacate Judgment

On February 18, 2011, the Customers filed the Motion.  On March 16, 2011, the Trustee submitted opposition in which he admitted that he knew the undisclosed information when he filed the Settlement Motion.[20]  The Trustee failed to offer any explanation for his utter failure to disclose material information and argued, instead, that the settlement was consistent with his business judgment. [21]   The Customers submitted a Reply in which they classified the Trustee's concealment of material information as sufficiently egregious to warrant the Trustee's removal. [22]

On March 30, 2011, the bankruptcy court heard argument on the Motion.  The Trustee offered no justification for his concealment of material information.  Nor did he

---

[20] Doc. #3942, Trustee's Opposition to Customers' Motion to set Aside the Order Approving the Trustee's Settlement with the Levy Heirs for Failure to Disclose Material Information (hereinafter the "Trustee's Opp. to Motion"), at 3.

[21] *Id.* at 4-5.

[22] Doc. # 3960, Rely at 5.

offer any legal authority for the proposition that his "business judgment" entitles him to conceal material information from the court and from creditors. [23]   The bankruptcy court entered the Order denying the Motion, failing to address the Trustee's concealment of material information and focusing, instead, on the "reasonableness" of the Settlement. [24]   Both the Trustee and the court ignored the fact that the "reasonableness" of the Settlement cannot be determined unless all material facts are disclosed.   The court struck the Reply in its entirety, holding that it was an improper attempt to remove the Trustee. [25]

## **ARGUMENT**

### I.   THE STANDARD TO SET ASIDE ORDERS UNDER RULE 60(b).

Rule 60(b) protects the integrity of the judicial process by enabling "a court to grant relief from a judgment in circumstances in which the need for truth outweighs the finality in litigation."  12 MOORE'S FEDERAL PRACTICE – Civil ("MOORE'S") ¶ 60.02 (citation omitted).  An order may be vacated for the following reasons:

> **(1)** mistake, inadvertence, surprise, or excusable neglect;
>
> **(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> **(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

---

[23] *See gen.* Doc. #3998, 03/30/11 Hrg. Tr. on the Motion (hereinafter the "03/30/11 Tr.").

[24] *See id.* at 18:21-21:5.

[25] *Id.* at 16:1-12.

**(4)** the judgment is void;

**(5)**   the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

**(6)**   any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  "The Rule empowers courts to set aside judgments under five traditional, specified types of circumstances in which it would be inequitable to permit a judgment to stand" and under a sixth ground, where "any other reason justifying relief from the operation of the judgment exists."  *Ackermann v. U.S.*, 340 U.S. 193, 202-03 (1950).

Subsections (2), (3), and (6) of Rule 60(b) are applicable here.  The bankruptcy court abused its discretion by failing to set aside the Settlement Order based upon existence of "(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud. . ., misrepresentation, or misconduct by . . . [the Trustee]. . . ; . . . or (6) any other reason that justifies relief."  *See* Rule 60(b).

## II.   THE BANKRUPTCY COURT ERRED IN DENYING THE MOTION PURSUANT TO RULE 60(b)(2), (3), AND/OR (6).

### A.   THE TRUSTEE'S CONCEALMENT OF NORMAN LEVY'S PARTICIPATION IN MADOFF'S SCHEME COMPELLED THE GRANT OF THE CUSTOMERS' MOTION UNDER RULE 60(b)(2).

To succeed on a Rule 60(b)(2) motion, the movant must establish the following elements:

(1) newly discovered evidence is of facts existing at the time of [the prior decision];

11

(2) the moving party is excusably ignorant of the facts despite using due diligence to learn about them;

(3) newly discovered evidence is admissible and probably effective to change the result of the former ruling; and

(4) the newly discovered evidence is not merely cumulative ... of evidence already offered.

*Banco Central Del Paraguay v. Parauay Humanitarian Foundation, Inc.*, 2007 WL 2493684, *2 (S.D.N.Y. Sept. 5, 2007) (quoting *Fidelity Partners, Inc. v. First Trust Co. of New York,* 58 F. Supp. 2d 55, 59 (S.D.N.Y.1999) (citation omitted) (footnote omitted).

The Customers met this standard.   First, the Trustee has admitted that he knew of Levy's financing of the Madoff scheme when he sought approval of the Settlement.[26] With respect to the second element, the movant must demonstrate that the newly discovered evidence "'could not have been found by due diligence.'"   *See In re Salander*, 2011 WL 2162916, *15 (Bankr. S.D.N.Y. June 2, 2011) (quoting *Ins. Co. of N. Am. v. Public Serv. Mut. Ins. Co.*, 609 F.3d 122, 131 (2d Cir. 2010)).   The Customers have been denied access to the BLMIS records that are in the Trustee's custody.[27]   Aside from having exclusive access to BLMIS' records, the Trustee has expended over $310 million in legal and forensic accounting fees (fees that are projected to exceed $1 billion by 2014).[28]   The Trustee's forensic accountants have been paid in excess of $130 million.[29]   Yet, the

---

[26] Doc. #3942, Trustee's Opp. to Motion, at 3 (acknowledging that new evidence regarding transactional history between BLMIS and Levy is "not new, having been considered by the Trustee at the time of the settlement . . .").

[27] Doc. #1013, Protective Order signed on 11/24/2009 Denying Discovery Sought by Lawrence R. Velvel.

[28] *See* Doc. #3862, Decl. of H. Chaitman, Ex. G (Harbeck Letter), at 14-15.

[29] *See id.* at 21.

Trustee has not filed a single report disclosing the information about Norman Levy.  As a result, this information could not have been discovered by the Customers who learned of the information through the Harbeck Letter and the Trustee's filing of the substantially unredacted JPMorgan Complaint in April 2011.[30]

With respect to the third and fourth elements, the newly discovered information is of such magnitude that, if known, it should have led the bankruptcy court to refuse to approve the Settlement.   In fact, however, the bankruptcy court failed to even consider the undisputed fact that the Levy Heirs paid a mere $220 million to "settle" a $2 billion liability to BLMIS and that there was no disclosure of what they did with the vast estate they inherited from their father, consisting of the BLMIS customers' stolen money.[31]

BLMIS customers have an over-riding interest in assuring that the Trustee obtains the maximum recoveries he can against Madoff's co-conspirators.  When the Trustee sought approval of the $220 settlement with the Levy Heirs, he bragged that it represented "the entire amount" that the Trustee was entitled to recover[32] and he concealed the fact that Levy was Madoff's co-conspirator.  If the Trustee had revealed only the fact that the Levy Heirs owed BLMIS $2 billion, the proposed settlement for approximately 10% of the indebtedness obviously would have been preposterous and it would have raised objections from all parties in interest, including the Customers.  The Trustee's failure to disclose the information about the $100 billion in financing is shocking in the

---

[30] The Trustee's failure to disclose material information has resulted in the filing of a motion to compel against the Trustee by more than 1,200 BLMIS customers.  Doc # 4164, Case No. 08-01789 (BRL).

[31] *See* Doc. #3960, Reply, at 4.

[32] *See* Doc. #3862, Decl. of H. Chaitman, Ex. E (Settlement Motion), at ¶¶ 12, 13; *see also* Doc. #3862. Decl. of H. Chaitman, Ex. F (02/18/10 Tr.), at 5:11-6:6.

context of his commending the Levy Heirs for their "forthright and sincere . . . desire to do the right thing."[33]

Therefore, the bankruptcy court erred in failing to vacate the Settlement Order on the basis of newly discovered evidence. It would be inappropriate to permit the Order to stand under these circumstances. *See Ackermann*, 340 U.S. at 202.

### B. THE TRUSTEE'S CONCEALMENT OF MATERIAL INFORMATION WARRANTED VACATION OF THE ORDER PURSUANT TO RULE 60(b)(3).

Under Rule 60(b)(3), a court can vacate an order for fraud, misrepresentation or other misconduct of a party. "Ordinarily clause (3) is invoked where material information has been withheld or incorrect or perjured evidence has been intentionally supplied." *Matter of Emergency Beacon Corp.*, 666 F.2d 754, 759 (2d Cir. 1981). "In addition, Rule 60(b) allows a court to set aside a judgment for fraud on the court." *Entral Group Intern, LLC v. 7 Day Café & Bar*, 2008 WL 4726306, *1 (2d Cir. Oct. 28, 2008) (citing *State St. Bank and Trust Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158, 176 (2d Cir.2004)). For a party to prevail, it needs to prove, by clear and convincing evidence, existence of material representations and demonstrate "'that the conduct complained of prevented the moving party from fully and fairly presenting his case.'" *Id.* (internal citation omitted).

Fraud upon the court "involves some intentional deceiving of the Court and some intentional deflecting of the Court from knowing all the facts necessary to make an appropriate judicial decision on the matters before it." *In re Pearson*, 210 B.R. 500, 501 (Bankr. D. N.H. 1997). It "is fraud that affects the integrity of the process of adjudica-

---

[33] Doc. #3862, Decl. of H. Chaitman, Ex. E (Settlement Motion), at ¶ 11.

tion." *See King*, 287 F.3d at 95. It is limited to "'that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.'" *See Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 702 (2d Cir. 1972) (quoting 7 Moore's 60.33, at 515 (1971 ed.)) (footnote omitted in original).

The Trustee's inexplicable concealment of material information clearly falls within this standard. Failure to disclose constitutes misrepresentation where a duty to disclose exists. *See Philadelphia Indem. Ins. Co. v. Horowitz, Greener & Stengel, LLP*, 379 F. Supp. 2d 442, 453 (S.D.N.Y. 2005); *see also Washington v. Kellwood Co.*, 2009 WL 855652, *3 (S.D.N.Y. March 24, 2009) (a fraud claim requires "that defendant knowingly made a material misrepresentation or failed to disclose material information that he had a duty to disclose"); *Barron Partners, L.P. v. LAB 123, Inc.*, 593 F. Supp. 2d 667, 671 (S.D.N.Y. 2009) ("Nondisclosure . . . becomes actionable . . . where a defendant has a duty to disclose."). There are numerous sources of the Trustee's duty to disclose material information to the court, especially when seeking the court's approval of a settlement.

First, the Trustee, as an officer of the court, owes a duty of utmost candor to the tribunal. *See Rubinow v. Ingelheim*, 2010 WL 1882320 (D. Conn. May 10, 2010) ("Attorneys are officers of the Court with a professional obligation to conduct due diligence and a duty of candor to the tribunal."); *see gen.* N.Y. R. Prof'l Conduct 3.3. An attorney "owes the court fiduciary duties and loyalty." *Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1006 (S.D.N.Y. 1986). When an attorney . . . omits material facts to the court, or acts on a client's perjury or distortion of evidence, his conduct may constitute a fraud on the

15

court." *Id.* (citations omitted); *Kupferman v. Consolidated Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972) (quoting 7 MOORE'S ¶ 60.33 at 513 (1971 ed.)) (footnote omitted) ("'[L]loyalty to the court, as an officer thereof, demands integrity and honest dealing with the court.   And when he departs from that standard in the conduct of a case he perpetrates a fraud upon the court.'").

The Trustee's failure to disclose Norman Levy's participation in the fraud and the Levy Heirs' $2 billion margin loan compels a finding of fraud because he concealed material information as an officer of the court.  *See e.g.*, *RCI HV, Inc. v. Transtec (RC) Inc.*, 2004 WL 1197246, *12 (May 28, 2004 S.D.N.Y. 2004) (holding that plaintiff's attorneys' conduct constituted fraud upon the court when, *inter alia*, they "omitted from sharing with Judge . . .  information that was relevant and necessary to a proper evaluation of their motion. . .").

Second, the Trustee owes a fiduciary duty to BLMIS' customers.  *See In re Center Teleproductions, Inc.,* 112 B.R. 567, 576 (Bankr. S.D.N.Y. 1990) (quoting *In re Chochise College Park, Inc.*, 703 F.2d 1339, 1357 (9th Cir. 1983)).  As such, he owes the Customers a duty of absolute candor.  *See Chiarella v. U.S.*, 445 U.S. 222, 228 (1980) (quoting RESTATEMENT (SECOND) OF TORTS § 551(2)(a) (1976)) ("[T]he duty to disclose arises when one party has information 'that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.'")

Third, under Bankruptcy Rule 9019, the Trustee is required to provide the bankruptcy court with all relevant information for the court, and the creditors, to evaluate a proposed settlement.  *See e.g. In re Prudential Lines, Inc.*, 170 B.R. 222, 247 (Bankr. S.D.N.Y. 1994) (courts are "entitled to give weight to the informed opinion of the Trustee . . . that the settlement is fair and equitable.").  "There can be no informed and inde-

pendent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion . . . ." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *see In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 427 (S.D.N.Y. 1993) (holding that "[t]he record . . . supports the reasoned decision . . . to approve the settlement, for it indicates that the Bankruptcy Court took into account and weighed the factors necessary for the determination of the appropriateness of the settlement."); *see also Geltzer v. Andersen Worldwide, S.C.*, 2007 WL 273526, *1 (S.D.N.Y. Jan. 30, 2007) ("Where a [bankruptcy] court is responsible for assessing the fairness of a proposed settlement, it must exercise more than superficial scrutiny and may not merely rely on the assurance of any party.").   Here, the bankruptcy court could not conceivably evaluate the Settlement when the Trustee withheld such explosive and incriminating facts and, at the same time, misled the court by praising the Levys for coming forward and offering to settle for the maximum the Trustee could sue them for. It is difficult to understand the Trustee's behavior as anything other than a deliberate fraud.

Fourth, as a SIPA trustee, the Trustee has a statutory obligation to "report to the court any facts ascertained by the trustee with respect to fraud, misconduct, mismanagement, and irregularities, and to any causes of action available to the estate."   15 U.S.C. § 78fff-1(d).  The Trustee has utterly failed to fulfill this statutory function in this case by not reporting to the bankruptcy courts the facts concerning Norman Levy's financing of Madoff's scheme and the facts concerning the outstanding $2 billion margin loan owed by the Levy Heirs.

17

The Trustee's dishonesty so taints the SIPA liquidation that, indeed, his removal is the only appropriate remedy.  However, at a minimum, the Settlement should have been set aside until all of the relevant facts can be put before the court.   Perpetrating a fraud upon the court warrants the most severe sanctions.  *See Pope v. Federal Express Corp.*, 974 F.2d 982, 984 (8th Cir. 1992) ("[T]he Supreme Court has recognized dismissal of a lawsuit to be a remedy within the inherent power of the court."); *Chambers v. NASCO, Inc.* 501 U.S. 32, 33 (1991) (citing *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946)) (recognizing that those who committed fraud on the court must pay attorneys fees incurred to obtain relief from such fraud.).

The bankruptcy court has a duty to protect the integrity of proceedings before it. By denying the Motion, the court failed to protect the interests of the customers, to whom the Trustee owes a fiduciary duty.  Clearly, by so doing, the court abused its discretion under FRCP 60(b).

### C.   SUBSTANTIAL JUSTICE REQUIRES THAT THE ORDER BE SET ASIDE PURSUANT TO FED. R. CIV. P. 60(b)(6).

Grounds exist to set aside the Settlement Order under subsection (6) of Rule 60(b), which permits a court to vacate a judgment for "any other reason that justifies relief."  Rule 60(b)(6) "should be liberally construed" in instances where its application is critical to bringing about "substantial justice."  *Radack v. Norwegian America Line Agency, Inc.*, 318 F.2d 538, 542 (2d Cir. 1963); *accord Gonzalez v. Crosby*, 545 U.S. 524, 542 (2005) ("Rule 60(b)(6) provides courts with authority adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.") (internal quotation marks and citations omitted).

In determining whether relief under Rule 60(b)(6) is warranted, "it is appropri-
ate to consider the risk of injustice to the particular parties, the risk that the denial of
relief will produce injustice in other cases, and the risk of undermining the public's con-
fidence in the judicial process." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S.
847, 848 (1988).

As a result of the Trustee's dishonest conduct, BLMIS customers have justifiably
lost confidence in the judicial process.   Thus, this case presents exceptional circum-
stances warranting this Court's finding that the bankruptcy court erred in failing to set
aside the Settlement Order pursuant to Rule 60(b)(6).

## III.   THE BANKRUPTCY COURT ERRED IN STRIKING THE REPLY.

The bankruptcy court had no basis to strike the Reply simply because, in a few
paragraphs, the Customers voiced the view that the Trustee's actions warranted his re-
moval.   The Customers' suggestion that the Trustee should be removed was clearly jus-
tified given the seriousness of the allegations underlying the Rule 60 motion, namely
fraudulent concealment of information material to the Settlement Motion.   The Cus-
tomers' suggestion, however, was peripheral, to the Motion.

Requests to strike irrelevant material are granted only when there is a "showing
that the challenged **<u>portion</u>** of the pleading has no bearing on the subject matter of the
litigation and that its inclusion would prejudice the defendant." *Lukowski v. County of
Seneca*, 2009 WL 467075, *14 (W.D.N.Y. Feb. 24, 2009) (emphasis added) (citing *Giu-
liano v. Everything Yogurt, Inc.,* 819 F. Supp. 240 (E.D.N.Y.1993)).   Only inadmissible
portions of a document should be stricken.   *U.S. v. Alessi,* 599 F.2d 513, 514-15 (2d Cir.
1979) (holding that just because some portion of the affidavit is inadmissible because it

is not based on personal knowledge does not mean the entire document should be stricken); *accord Murray v. Carroll*, 2008 WL 2705419, \*4 (D. Conn. July 9, 2008) (citing *John Hancock Property and Cas. Ins. Co. v. Universal Reinsurance Co., Ltd.*, 147 F.R.D. 40, 45 (S.D.N.Y. 1993)) ("To the extent that a[n] . . . affidavit contains inadmissible hearsay which references other evidence that is properly before the court, the court may disregard the hearsay but separately consider the admissible evidence.")

If the bankruptcy court deemed irrelevant the portions of the Reply concerning whether the Trustee was fit to continue to serve, he should have simply ignored the handful of sentences regarding that issue.  At most, the bankruptcy court should have stricken only those portions of the Reply he found irrelevant or inappropriate.  It was error to strike the entire Reply.

**<u>CONCLUSION</u>**

In order to preserve the integrity of the bankruptcy proceeding, the Customers respectfully request that the Court reverse and vacate the Order of the bankruptcy court denying the Motion.

June 20, 2011

Respectively submitted,

BECKER & POLIAKOFF LLP
By   <u>/s/ Helen Davis Chaitman</u>
Helen Davis Chaitman
45 Broadway
New York, NY 10006
(212) 599-3322
hchaitman@beckerny.com

20

## <u>CERTIFICATE OF SERVICE</u>

I, Chelsey Davis, hereby certify that I caused a true and correct copy of the foregoing document(s) to be served upon the parties in this action who receive electronic service through CM/ECF.  I certify under penalty of perjury that the foregoing is true and correct.

Dated: June 20, 2011

<u>*/s/ Chelsey Davis*</u>

21